ROBERT B. HINCKLEY, JR. (SBN: 290786)
CLAIRE L. KATZ (SBN: 358999)
Buchalter LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: (213) 891-0700
Fax: 213.896.0400
Email: rhinckley@buchalter.com
Email: ckatz@buchalter.com

MATTHEW H. JASILLI (*pro hac vice*)
Buchalter LLP
1099 18th Street, Suite 1900
Denver, CO 80202
Telephone: (303) 253-6740
Email: mjasilli@buchalter.com

Attorneys for Plaintiff
TRINITY DENTAL ARTS, PLLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRINITY DENTAL ARTS, PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>KEYSTONE DENTAL, INC.,<br><br>Defendant. | CASE NO. 8:26-cv-00718-CAS-KES<br><br>*Assigned to the Hon. Christina A. Snyder, United States District Judge*<br><br>*Hon. Karen E. Scott, United States Magistrate Judge*<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>*Trial Date: Not yet set*<br>*Complaint filed: March 25, 2026* |

IT IS HEREBY STIPULATED AND AGREED by the parties, through their respective counsel, subject to the approval of the Court, that the following Stipulated Order Regarding the Discovery of Electronically Stored Information (the "Stipulated ESI Protocol" or the "Protocol") be entered by this Court:

# STIPULATED ESI PROTOCOL

**1. Purpose**

a. This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

b. As used herein, "Producing Party" means the party producing documents or ESI in response to a discovery request. "Requesting Party" means the party requesting production of documents or ESI. "Party" or "Parties" includes both the Requesting Party and the Producing Party. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

**2. Cooperation**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant and discoverable subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations.

**3. Proportionality**

a. The parties will consider the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) in formulating their discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

b. The parties will consider the option of prioritizing certain discovery where appropriate. To reduce the costs and burdens of discovery, the parties have entered into a non-waiver agreement encompassing all elements and protections of Federal Rule of Evidence 502(d), as set forth in the Standard for Addressing Privilege section below and memorialized in the Stipulated Protective Order, thereby reducing pre-production review costs, and reducing costly and time-consuming motions in the event of inadvertent production.

**4. Preservation**

Each party shall take reasonable and proportional steps to preserve ESI in its possession, custody, or control that is relevant to the claims or defenses in this action, consistent with Fed. R. Civ. P. 26(b)(1) and the Sedona Conference Principles. The parties are not required to preserve, collect, or produce ESI from sources that are not reasonably accessible, including backup tapes, deleted or ephemeral data, and other sources identified in the Sedona Conference Commentary on Proportionality, unless a court order requires otherwise upon a showing of good cause. Any dispute regarding the scope of a party's preservation obligations shall be resolved through the meet-and-confer process set forth in this Protocol and, if necessary, by the Court under the proportionality standard of Fed. R. Civ. P. 26(b)(1).

**5. Sources, Custodians, and Date Ranges for ESI**

The parties agree to limit searches of discoverable ESI as follows.

a. The parties shall meet and confer on reasonably accessible sources of ESI that are reasonably likely to contain relevant or responsive information, including custodians reasonably likely to have discoverable information, search parameters, and reasonable date ranges for searches.

b. ESI on personal electronic devices, such as mobile phones, shall be collected using reasonable methods that preserve the integrity of the data. The parties agree and stipulate that the application iMazing may be used to collect text messages from mobile iPhone devices and the application Tansee may be used to collect text messages from mobile Android devices. The parties will meet and confer regarding collection methods for mobile devices if a dispute arises.

c. The parties further agree to be bound by the Stipulated Protective Order to be entered in this action during the sharing of ESI.

d. No party may seek relief from the Court concerning compliance with this Stipulated ESI Protocol unless it has conferred with other affected parties. However, once a party has identified that it wishes to confer on an issue controlled by this Stipulated ESI Protocol, conferral must be completed by the parties within 7 business days (including any phone conferral required by the Court), unless (i) the relevant parties agree to extend that time or (ii) unusual or exigent circumstances require a longer conferral window.

e. If necessary, the Stipulated ESI Protocol shall be amended only by written agreement signed by all parties.

**6. Reviewing and Filtering ESI for Relevancy**

Each party will be responsible for reviewing and producing its own documents consistent with Sedona Conference Principles. The parties agree that a Producing Party may employ reasonable methods to filter ESI for relevancy, including

technology assisted review ("TAR") and artificial intelligence ("AI"). To facilitate a cooperative, efficient, and cost-effective discovery process, the parties may agree to meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and to filter out ESI that is not subject to discovery. No party is required to disclose custodians or search methodology outside of the meet-and-confer process.

**7. General Production Format**

a. The parties will produce ESI in TIFF image format provided that the documents do not become illegible or unusable or in any way alter existing metadata when converted to TIFF image format. Documents may also be produced as searchable PDFs where conversion to TIFF is not practical, accompanied by a DAT metadata load file and an OPT load file. Any party may request production of the native format of any document produced in any non-native format. Produced TIFF images shall show all text and images visible in the form in which the electronic document was last saved, including hidden content, tracked changes or edits, comments, notes, and other similar information viewable within the document in its native file format, with the exception of redacted portions. If a dispute arises as to the reasonableness of the request, the parties agree to meet and confer in an effort to resolve their differences.

b. Certain documents that become illegible or unusable when converted to TIFF image format (Microsoft Excel files, other similar spreadsheet application files, Microsoft Access and Microsoft Project, and audio and video files), must be produced in native format, unless they contain information that requires redaction. The parties reserve their rights to seek additional electronic documents in their native format, including natively redacted spreadsheet documents that preserve the searching, sorting, and filtering characteristics intrinsic to spreadsheet functionality. Electronic documents should be produced in such fashion as to identify the location (i.e., the

network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored).

c. All production documents will be produced with extracted text and load files compatible with industry standard software (e.g., Relativity, Eclipse, and Everlaw) and including the data fields provided in **Exhibit A**. In those instances where redaction is used, OCR text will be provided in lieu of the extracted text to allow for removal of the redacted text from production. For documents produced in native format, in addition to producing extracted text and the data fields set forth in Exhibit A, the producing party will provide slip sheets endorsed with the production number and level of confidentiality pursuant to any applicable protective orders in this case.

d. Non-electronic documents shall be scanned into a static-image format. Copies of file folders and identification of file custodians shall be produced.

e. For documents that have originated in paper format, the following specifications should be used for their production.

i. Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

ii. Media may be delivered on CDs, DVDs, external USB hard drives or via secure FTP. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

iii. Each delivery should be accompanied by an image cross reference file that contains document breaks.

iv. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are

not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGDOC, (b) ENDDOC, (c) BEGATT, (d) ENDATT, (e) CUSTODIAN, (f) ALLCUSTODIANS, (g) NATIVEFILELINK, (h) TEXTPATH, and (i) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

v. The standard delimiters for the metadata load file should be:

vi. Field Separator, ASCII character 020: " "

vii. Quote Character, ASCII character 254 "þ"

viii. Multi-Entry Delimiter, ASCII character 059: ";"

f. The parties may redact (1) information that is privileged or protected from discovery, including work product or information protected by any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law, or regulation, including protected personal information; and (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or proprietary information within data sources that contain relevant information. The parties will identify when information has been redacted for any reason by making all redactions in easily visible black redactions. Other than documents produced in native format, the parties will produce redacted documents in TIFF format with corresponding searchable OCR text. For file types produced with redactions in native format, the associated metadata shall be similarly protected from disclosure.

**8. Image Format**

a. Documents that are converted to TIFF image format will be produced in accordance with the following technical specifications:

i. Images will be single-page, color-for-color TIFF image files at 300 dpi;

ii. TIFF file names cannot contain embedded spaces;

iii. Bates numbers should be endorsed on the lower right corner of all TIFF images and will be a unique, consistently formatted identifier, i.e. alpha prefix along with a fixed length number (e.g., ABC0000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.

iv. Confidentiality designations, if any, will be endorsed on all TIFF images;

b. Images will be delivered with an image load file in the Opticon (.OPT) file format.

c. Images, native files, and text files should be stored and delivered in separate folders named "IMAGES," "TEXT" and "NATIVE." Folders should be segmented into directories not to exceed 5,000 files.

**9. Searchable Text**

a. Searchable text of entire documents will be produced either as extracted text for all documents that originate in electronic format, or, for any document from which text cannot be extracted, as text generated using Optical Character Recognition (OCR) technology. OCR text will be provided for all documents that originate from hard copy or paper format. For redacted documents, the full text of the redacted version of the document will be produced.

b. Searchable text will be produced as a document-level multi-page ASCII text file with the text file named the same as the BEGDOC field, placed in a separate folder. The full path of the text file must be provided in the .DAT file for the TEXTPATH field.

**10. Native Files**

a. Native file documents, emails or attachments may be included with the electronic production using the below criteria:

v. Documents produced in native format shall be re-named to reflect the production number.

vi. The full path of the native file must be provided in the .DAT file for the NATIVEFILELINK field;

vii. The confidentiality designation under the Stipulated Protective Order to be entered in this action will be produced in the load file in the CONFIDENTIALITY field.

b. When data produced in accordance with this Protocol is used in any proceeding herein, including depositions, hearings, or trial, the TIFF image copy of documents shall be the copy used, unless the image copy is so illegible or unwieldy as to make it impractical, in which case the native version may be used. If the native version is used as an exhibit, the record must identify the exhibit using its Bates number, and the Bates number shall be written on any paper or electronic copy of the exhibit. The confidentiality designation of the document shall also be stated on the record and written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any document. This provision does not apply to summary exhibits or demonstratives.

c. Excel spreadsheets should be produced in native format with lock/protect features and password protection disabled.

d. The Producing Party shall make best efforts to decrypt password-protected files or produce the passwords in combination with the files. In the event that passwords cannot be identified or files decrypted, the Producing Party shall include a slipsheet noting that fact and identifying the file.

**11. Embedded Objects**

a. The parties may exclude embedded objects from the production.

b. Following production of the files containing embedded objects, a receiving party may make reasonable requests, with respect to specific embedded objects particularly identified in the requests, for production of these embedded objects as stand-alone files. The producing party shall cooperate reasonably in responding to any such requests.

c. Families and Attachments. The parties shall produce attachments to relevant emails as part of the document family. If one attachment to an email is relevant, then the full family, including both the email and any additional attachments, shall also be produced. Parent-child relationships (the association between an attachment and its parent document) shall be preserved where possible. Child documents should be consecutively produced immediately after the parent document, and the producing party will provide BEGATT and ENDATT for each produced attachment in the data load file.

d. Documents Containing Hyperlinks. The parties shall address documents that contain hyperlinks to other documents stored in shared or collaborative platforms (such as Microsoft SharePoint, Google Drive, or OneDrive) separately from the treatment of document families. The parties shall meet and confer regarding collection and production, including the feasibility of identifying and producing the version of the hyperlinked document that existed at the time the document containing the hyperlink was sent.

**12. Structured and Unstructured Data in Databases**

a. To the extent a response to discovery requires production of electronic information stored in a database, the parties will discuss methods of production that will best provide all relevant information.

b. The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. Upon request of any party, a document reference sheet shall be provided to describe the purpose of the database and the meaning of all tables and column headers contained therein.

**13. De-Duplication**

a. Documents shall be de-duplicated using a verifiable process. The producing party shall identify all custodians who possessed a de-duplicated document in the applicable metadata field.

b. For the avoidance of doubt, a document is not considered to be a duplicate in the case where email headers or attachments differ in any regard or where the same document is both attached to an email and exists in a form that is separate from such email (e.g., as an attachment to another email, as a standalone document saved to some electronic media, etc).

c. For good cause shown, the receiving party shall have the right to request all duplicates of a produced document.

**14. Email Threads**

a. Email threads are email communications that contain prior or lesser-inclusive email communications that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread.

b. Each party may produce only the most inclusive email threads, as long as the most inclusive email thread contains all attachments included in the lesser-inclusive email communications.

c. Similarly, a party may list the most inclusive email thread on any required privilege log. However, if the most inclusive email thread contains privileged portions and would otherwise be logged in its entirety as privileged, then the thread must be produced with privileged material redacted and the redacted portion logged.

d. Following production of the most-inclusive email threads, a receiving party may make reasonable requests, with respect to most-inclusive email threads particularly identified in the requests, for production of individual lesser-inclusive emails. The producing party shall cooperate reasonably in responding to any such requests.

**15. Productions**

Rolling productions are contemplated by this Protocol. The Producing Party shall provide the Requesting Party with information about when it expects to provide rolling productions and when it expects to complete those rolling productions in response to written requests for production. In the case of rolling productions, an overlay data file shall be produced along with each volume to account for updated duplicate custodian information.

**16. Standard for Addressing Privilege**

a. The parties separately have entered into an agreement under Fed. R. Evid. 502(d), which is memorialized in the Stipulated Protective Order agreed to by the parties in this case.

b. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A)-(B).

c. Communications involving inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

d. The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs shall be produced on a rolling basis, no later than thirty (30) days after the corresponding document production, unless the Requesting Party or the Court grants an extension of time.

e. Should the Requesting Party, in good faith, have reason to believe a particular entry or category of entries on a privilege log does not reflect privileged information, or that the entry does not provide sufficient information to assess the claim of privilege, the Requesting Party may request additional information, and the Producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5). Should the Requesting Party, in good faith, continue to believe a particular redaction or withheld document is responsive and not privileged after the Producing Party has provided additional information, the Requesting Party shall provide the Producing Party with its justification and an opportunity to reconsider its assertion of privilege. The parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court for resolution.

**17. Non-Waiver, Data Security, and Costs**

a. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this Stipulated ESI Protocol waives any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI or precludes

any party from challenging the admissibility, discoverability, production, relevance, or confidentiality of information produced under this Protocol or otherwise objecting to its production or use at trial.

b. The parties agree to provide adequate security to protect data produced by the other party or by non-parties. This includes secure data storage systems, established security policies, and security training for employees, contractors, and experts. Adequate security also includes such measures as data encryption in transit, data encryption at rest, data access controls, and physical security, whether hosted or outsourced to a vendor or on premises. At a minimum, any receiving party will provide reasonable measures to protect non-client data consistent with the American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 477R.

c. Each party will bear the costs to process and review its own documents according to this Protocol. Notwithstanding this provision, nothing in this Protocol limits or prohibits a prevailing party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: October 5, 2026

**BUCHALTER**

/ s / Claire L. Katz

Robert Hinckley
Claire L. Katz
Matthew H. Jasilli
*Attorneys for Plaintiff*
*Trinity Dental Arts, PLLC*

Dated: October 5, 2026

**GORDON REES SCULLY MANSUKHANI, LLP**

/ s / Matthew P. Nugent

Matthew P. Nugent
Thomas R. Watson
*Attorneys for Defendant*
*Keystone Dental, Inc.*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: 10/14/2026

Karen E. Scott

Honorable Karen E. Scott
United States Magistrate Judge

# EXHIBIT A

| | Field | Definition | Applicable Doc Type |
|---|---|---|---|
| 1. | BEGDOC | Beginning Bates number (production number) | All |
| 2. | ENDDOC | Ending Bates number (production number) | All |
| 3. | BEGATT | First Bates number of family range (i.e. Bates number of the first page of the parent email) | All |
| 4. | ENDATT | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | All |
| 5. | CUSTODIAN | Name of person or data source from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.). | All |
| 6. | ALLCUSTODIANS | Name(s) of all custodian(s) that possessed the document; includes any custodian(s) whose duplicate file(s) was removed during processing. | |
| 7. | DOCDATE (mm/dd/yyyy) | Document date (if available) | All |
| 8. | CONFIDENTIALITY | Indicates if the document has been designated as “Confidential” or “Highly Confidential” | All |

| | Field | Definition | Applicable Doc Type |
|---|---|---|---|
| | | pursuant to any applicable Protective Order. "No" indicates those documents that are not so designated. | |
| 9. | REDACTED | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All |
| 10. | EMAILFROM | Sender | Email |
| 11. | EMAILTO | Recipient | Email |
| 12. | EMAILCC | Additional recipients | Email |
| 13. | EMAILBCC | Blind additional recipients | Email |
| 14. | EMAILSUBJECT | Subject line of email | Email |
| 15. | DATESENT (mm/dd/yyyy) | Date sent | Email |
| 16. | TIMESENT | Time sent | Email |
| 17. | DATERCVD (mm/dd/yyyy) | Date received | Email |
| 18. | TIMERCVD | Time received | Email |
| 19. | FILENAME | Name of original file name of an E-Doc or attachment to an email | Edocs |
| 20. | AUTHOR | Creator of document | Edocs |
| 21. | DATECRTD (mm/dd/yyyy) | Creation date | Edocs |
| 22. | DATELASTMOD (mm/dd/yyyy) | Last modified date | Edocs |
| 23. | HASHVALUE | MD5 Hash Value | Email, E-docs |
| 24. | TEXTPATH | Full path for OCR or | All |

| | Field | Definition | Applicable Doc Type |
|---|---|---|---|
| | | Extracted Text files on producing media | |
| 25. | NATIVEFILELINK | Full path for documents provided in native format on producing media | Email and E-docs |